# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa J. Redding,<br>Alan Redding,<br><br>       Plaintiffs,<br><br>vs.<br><br>Capital One Bank (USA), N.A.,<br>Messerli & Kramer, P.A.<br><br>       Defendants. | Civil Action No:**:**<br><br><br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## I. JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681 et seq. and 28 U.S.C. § 1367 for pendent state law claims.

## II. PARTIES

2. Plaintiff Lisa J. Redding is a natural person who resides in the City of Bloomington, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

3. Plaintiff Alan Redding is a natural person who resides in the City of Bloomington, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4. Defendant Capital One Bank (USA), N.A. (hereinafter "Capital One"), is a National Association operating from an address of 1680 Capital One Drive, McLean, Virginia 22102.

5. Defendant Messerli & Kramer, P.A., (hereinafter "Messerli & Kramer") is a Professional Association and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), doing business from an address of Suite 250, 3033 Campus Drive, Plymouth, Minnesota 55441-2662, and at all times relevant herein Defendant Messerli & Kramer was acting within the time and space limits of its agency relationship with Capital One, and on behalf of, and for the benefit of its client Capital One.

### III. FACTUAL ALLEGATIONS

6. In 1999, Plaintiffs opened a joint credit card account with Capital One.

7. Also in 1999, Plaintiff Alan Redding opened a separate credit card account with Capital One.

8. Between 1999 and 2008 Plaintiffs incurred alleged financial obligations on the credit card accounts with Capital One.

9. The alleged financial obligations were primarily for personal, family, or household purposes as defined by 15 U.S.C. § 1692a(5).

10. Plaintiff's allegedly defaulted on their obligations on the credit card accounts in 2008.

11. Beginning in 2009, Defendant Messerli & Kramer began efforts to collect the credit card debts on behalf of Capital One.

12. Employees of Defendant Messerli & Kramer made numerous telephone calls to Plaintiffs in their efforts to collect the alleged debt.  In these telephone calls the

debt collectors made disparaging remarks and implied that Plaintiffs would suffer social disapproval if other people knew about their debts.

13. Employees of Defendant Messerli & Kramer made numerous telephone calls to Plaintiffs despite Plaintiff's insistence that they had employed Freedom Debt to negotiate on their behalf and Plaintiffs repeated statements that they would not make any payments directly to Messerli & Kramer, but rather wanted to work it out through Freedom Debt.

14. As part of Defendants campaign to collect the debt, Defendants served 2 Complaints and an answer to discovery which alleged that a 2002 Customer Agreement was the document which contained the terms and conditions governing the account. A copy of the "Customer Agreement" provided by Defendants on all three occasions is attached hereto as Exhibit 1.

15. Upon information and belief the 2002 Customer Agreement was not the correct document containing the terms and conditions governing the account, and Defendants' statements were false and misleading.

16. Upon information and belief, Defendants intended to deceive Plaintiffs.

17. Upon information and belief Defendants were aware that the statements were false, and the statements were made willfully.

18. Plaintiffs incurred actual damages as the result of Defendants actions and omissions in the form of suffering emotional distress including but not limited to anxiety, fear, and depression, as well as suffering loss of sleep, lost wages from

taking time off to address the collection matter and decreased productivity, marital stress and other actual damages.

## IV.  TRIAL BY JURY

16. That Plaintiff is entitled to and hereby respectfully requests a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

## V.  CLAIMS

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 .S.C. §1692 et seq

17. Plaintiff incorporates by reference paragraphs 1 through 18 as though fully stated herein.

18. The foregoing acts of Defendant Messerli & Kramer, in attempting to collect this alleged debt against Plaintiffs, constitute violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(1), 1692d(5), 1692e, and 1692e(10).

19. Plaintiffs have been harmed by these violations by Defendant Messerli & Kramer, and Plaintiffs are entitled to statutory damages, actual damages, and attorneys fees and costs pursuant 15 U.S.C. § 1692k(a).

### COUNT II.

### VIOLATIONS OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT

### MINN. STAT. § 325D.44 Subd. 1(13)

20. Plaintiff incorporates by reference paragraphs 1 through 18 as though fully stated herein.

21. Defendants willfully made a false statement that the document attached to their state court complaints and produced by Defendants in response to Plaintiffs discovery in the state court actions was the document containing the terms and conditions that governed the credit card accounts that were the subject of the complaints.

22. Defendants statements violated the Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44 Subd. 1(13).

23. Plaintiffs have been seriously damaged by Defendants' violation of the Uniform Deceptive Trade Practices Act and are entitled to actual damages, costs and attorneys fee.

## COUNT III.

### FRAUD

24. Plaintiffs incorporate by reference paragraph 1 through 18 as though fully stated herein.

25. Defendants knew that their statements were false.

26. Defendants intended that Plaintiffs would rely on the statements.

27. Plaintiffs did rely on the statements.

28. As a result of Defendants false statements Plaintiffs have suffered damages and are entitled to actual damages and compensatory damages.

## COUNTS IV and V.

## DECEIT, COLLUSION AND MISCONDUCT BY ATTORNEY

29. Plaintiff incorporates by reference each and every above stated paragraph as though fully stated herein.

30. Defendant Messerli & Kramer, by making false statements, intended to deceive Plaintiffs, or consented to Defendant Capital One's attempt to deceive Plaintiffs.

31. Defendant Messerli & Kramer, apprised by Plaintiff's counsel that the statements were false, delayed Defendant Capital One's suit against Plaintiffs in an attempt to avoid a claim against Defendant Messerli & Kramer for violations of the Fair Debt Collection Practices Act.

32. That Defendant Messerli & Kramer and its attorney employees stood to gain by avoiding liability for violations of the Fair Debt Collection Practices Act.

33. The actions of Defendant Messerli & Kramer and its attorney employees in making false statements violated Minn. Stat. §481.07.

34. The omissions of Defendants Messerli & Kramer in not prosecuting the Complaints served upon Plaintiffs on behalf of Defendant Capital One violated Minn. Stat. §481.071.

35. Plaintiffs have been seriously damaged as a result of Defendant Messerli & Kramer's actions and omissions and are entitled to treble damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment as follows:

### COUNT I

- for an award of statutory damages of $1,000.00 to each Plaintiff herein for violation of the FDCPA pursuant to 15 U.S.C. §1692k, against Defendant Messerli & Kramer;

- for an award of actual damages, costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k against Defendant Messerli & Kramer;

### COUNT II

- for an award of costs and attorney fees pursuant to Minn. Stat. § 325D.45 Subd. 2. against all Defendants herein;

### COUNT III

- for an award of actual and compensatory damages for Fraud in a reasonable amount in excess of $50,000.00, against all Defendants;

### COUNTS IV and V

- for an award of treble damages for Plaintiffs, and against Defendant Messerli & Kramer for violations of Minn. Stat. § 481.07 and 481.071;

### SUCH OTHER RELIEF

- for Plaintiff to be awarded costs of litigation and attorneys' fees against each and every Defendant under each of the allegations herein;

- for such other and further relief as may be just and proper.

-8-

Dated this 27th day of October, 2010.

                                        Respectfully submitted,

                                        **WEIG LAW FIRM, LLC**

                                        BY: _s/Paul H Weig_____
                                        Paul H. Weig, Atty. ID No. 0288792
                                        Attorney for Plaintiff
                                        3101 Irving Avenue South
                                        Minneapolis, MN 55408
                                        (612) 501-4841

Lisa J Redding
Alan Redding

vs.

Capital One Bank (USA), N.A.
Messerli & Kramer, P.A.

COMPLAINT

# EXHIBIT 1.

## CUSTOMER AGREEMENT

Welcome to Capital One. We are pleased to open your credit card account. This Agreement contains information about your account. Please read it and keep it for your records. In this Agreement the words "you," "your" and "yours" refer to each person who signed the application and to anyone else who uses the account... ...and ...as successors or assigns. We can delay enforcing our rights under this Agreement without losing them.

**Using Your Account.** You can make purchases and obtain cash advances (if cash advances are an option for your account) by using your card, account number, and any account access checks (including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar checks) that we may send to you. When we provide you with account access checks, we will tell you whether they will be treated as purchases, cash advances, or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances.

Your card or account cannot be used in connection with any Internet gambling transactions. Your card and account may only be used for valid and lawful purposes. If you use, or allow someone else to use, the card or account for any other purpose, you will be responsible for such use and may be required to reimburse Capital One and MasterCard International Incorporated or Visa USA, Inc., as applicable, for all amounts or expenses they pay as a result of such use.

You agree that we are not responsible if anyone refuses to honor your account. If you do not use your account, you may cancel it by returning your card(s) and account access checks to us within 30 days after you receive them.

**Cash Equivalent Transactions.** If cash advances are an option for your account, you can use your account to purchase items that are directly convertible to cash. These cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include the purchase of wire transfer money orders, bets, lottery tickets, casino gaming chips, and other similar products or services.

**Your Credit Limit.** You agree to make purchases or obtain cash advances only up to your credit limit. If you have different credit limits for different segments of your account, you will be informed of the credit limits on your periodic statement. We may change your credit limit at any time, may limit the amount that is available for cash advances, or may exclude cash advances entirely from your account. We may honor transactions in excess of your credit limit and those transactions will be covered by this Agreement.

**Making Payments.** You promise to pay us all amounts due resulting from the use of your account, including any finance charges and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a negotiable instrument such as a check or a money order must be in a form acceptable to us and be drawn on a U.S. financial institution.

You must pay at least the minimum payment shown on your statement. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We cannot accept late payments or partial payments or checks and money orders marked "payment in full" or other similar language, without losing any of our rights under this Agreement including our right to receive payment in full.

**Periodic Statement.** Each month you have a balance in your account, we will send you a statement showing all transactions billed to your account during the billing period. The billing period is the time from one statement closing date through and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, your January billing period is the billing period with the statement closing date in January.

**Finance Charge Information.**

A. **Minimum Finance Charge.** For each billing period that your account is subject to a finance charge, a minimum total finance charge of $0.50 will be imposed. If the total finance charge resulting from the application of your periodic rate(s) is less than $0.50, we will subtract that amount from the $0.50 minimum and the difference will be billed to the purchase segment of your account.

B. **Accruing Finance Charge.** You may not avoid finance charge on cash advances and special transfers. You may avoid finance charge on new purchases, new special purchases, and on new other charges by paying the total new balance in full prior to the following statement closing date (this is the grace period on new purchases). If you do not pay the entire new balance from the previous monthly statement, finance charge will accrue on the entire previous new balance from the first day of the new billing period. Finance charge, when applicable, will be assessed as follows:

- Transactions made during the current billing period: from transaction date.
- Undated transactions and transactions made with Convenience Checks: from the date the transaction is processed to your account.
- Transactions made prior to the current billing period: from the first calendar day of the current billing period.

C. **Periodic Rates.** We determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding it to the nearest 1/100,000th of 1%. (Until that time, we determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding up to the nearest 1/1000th of 1%.) The rate may be different for each segment of your account (e.g., cash advance, purchase, special purchase, and special transfer if applicable for your account). You were told the daily periodic rate(s) when you opened your account. If your account has an introductory rate(s), the rate(s) will remain in effect unless you are 30 days or more late in making a payment or are overlimit in which case the periodic rate(s) may be changed to the postintroductory rate(s). If any other rate changes are made subsequent to your account opening, you will be advised of the new rate.

D. **Calculating Finance Charge.** We calculate finance charge each day by multiplying the balance of each segment of your account (e.g., cash advance, purchase, special purchase, and special transfer) by the daily periodic rate(s) that has been previously disclosed to you. Each day during the billing cycle, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. We then add up the results of these daily calculations to arrive at your total periodic finance charge.

To get the separate daily balances for each segment of your account for the current billing cycle, each day we take the separate beginning balance for each segment and separately add any transactions and any periodic finance charges calculated on the previous day's balance for each segment. We then subtract any payments or credits posted as of that day that are allocated to each segment. This gives us the separate daily balances for each segment of your account. However, the daily balance for purchases is considered to be zero for each day of the current billing cycle if you paid in full the New Balance, if any, shown on your previous statement (or if your New Balance was zero or a credit amount).

E. **Cash Advance Fee Finance** ...

---

fee is changed subsequent to your account opening, you will...

F. **Temporary Reduction in Finance Charge.** We reserve the right to not assess finance charges for any given billing period.

**Other Charges.** The following charges may be billed to the purchase segment of your account, unless otherwise specified: late charge if we do not receive your payment in time for it to be credited by the following statement closing date; overlimit charge if your account exceeds any temporary or permanent assigned credit limit, even if we approved the overlimit amount; returned check charge if a check is returned to us for any reason, or if we cannot honor your account access checks for any reason; and copying charges for duplicate copies of transactions or statements unless required for billing dispute resolution. These charges will not be assessed if your billing address was in PR when your account was opened. The fee amounts were disclosed to you when you opened your account. If any of these fees are changed subsequent to your account opening, you will be advised of the new fee. We reserve the right to waive these fees without prior notification to you.

**Membership Fee.** If your account has a membership fee, it was disclosed to you when you opened your account. The fee will be billed to the purchase segment of your account. If the fee is changed subsequent to your account opening, you will be advised of the change.

**Future Offers.** The terms of any future offer will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

**Default.** We may consider you to be in default under this Agreement if: (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason. To the extent permitted by law, you may also be in default under this Agreement if (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our affiliates, or (2) you made any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you. After you are in default (or after we give you any notice of or right to cure the default if required by law), we may restrict your account from new transactions, or close your account and demand immediate payment of the entire outstanding balance. To the extent permitted by law, you agree to pay all court costs and collection expenses incurred by us in the collection of any amount you owe us under this Agreement. If you default and we refer your account for collection to an attorney who is not our salaried employee, to the extent permitted by law, you agree to pay reasonable attorneys' fees. You also agree to pay any costs we may incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list.

**If You Close Your Account.** You can request to close your account by calling our Customer Relations Department. You must return all cards and account access checks to us, cancel all preauthorized billing arrangements, and cease using your account. If you do not cancel preauthorized billing arrangements, we will consider receipt of a charge your authorization to reopen your account. Additionally, your account will not be closed until you pay all amounts you owe us including: any transactions you have authorized, finance charges, past due fees, overlimit fees, returned check fees, cash advance fees and any other fees assessed to your account. You are responsible for these amounts whether they appear on your account at the time you request to close the account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed or the reopening of your account if it has already been closed. For example, if you authorized a purchase from a merchant and we receive the transaction from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account, and you will be responsible for payment. If there is a membership fee for your account, the fee will continue to be charged, to the extent permitted by law, until the account balance has been paid in full as defined above.

If you want to stop an authorized user's access to your account, you must send us written notice along with the user's card (if any) and any account access checks he or she may have. If you are unable to return that person's card and account access checks, and you advise us in writing to close your account, your account will be closed and both you and the joint cardholder, if any, may apply for a new account. If we close the account, you and the joint cardholder, if any, will still be liable, individually and together, for all amounts charged to your account.

**If We Cancel Your Account or Suspend Credit Privileges.** We may at any time, with or without cause and without advance notice, terminate this Agreement and/or temporarily or permanently suspend your credit privileges. This includes, but is not limited to, situations where you have violated this Agreement or where we have reason to doubt your creditworthiness (for example, if you pay us with insufficient funds checks on more than an occasional basis). Your obligations under this Agreement continue after your rights to obtain credit have been terminated or suspended. We may delay in enforcing our rights under this Agreement without losing them.

**Changes in Terms.** We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Notice will be mailed to the last billing address indicated in our records. Changes to the annual percentage rate(s) will apply to your account balance from the effective date of the change, whether or not the account balance included items billed to the account before the change date, and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

**Applicable Law.** This Agreement will be governed by Virginia law and Federal law.

**Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provisions.

**Lost or Stolen Cards or Account Access Checks.** If your cards or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number shown on the front of your periodic statements. Your liability for unauthorized use of your cards or account access checks will not exceed $50.00. You will not be liable for unauthorized use that occurs after you notify us.

**Your Billing Address.** You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the

space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records. **Communications.** We may call you using live operators, automatic dialing devices, or recorded message(s) at home or work and those calls will not be considered unsolicited. If [...] refuses any calls we make or receive. We may release information to others regarding the status or history of your account. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us.

**Cardholder Benefits.** Cardholder benefits may be changed or terminated without notice. The benefits may be provided by third parties; we are not liable for such benefits or for the actions or omissions of the third parties.

**U.S. Currency.** If you make a purchase or cash advance in foreign currency, the transaction will be converted into U.S. dollars using Visa or MasterCard regulations and Visa or MasterCard may charge you a conversion fee. The rate in effect on the conversion date may differ from the rate used on the transaction date.

**ARBITRATION:**

You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

**IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION. THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.**

**Special Definitions for this Arbitration Provision.** For the purposes of this arbitration provision ("Arbitration Provision"), the following definitions shall apply in addition to the definitions set forth in this Customer Agreement ("Agreement"):

"We", "us" and "our" mean the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent, and their direct and indirect subsidiaries and affiliates, as well as all of their respective employees, officers, directors, licensees, predecessors, successors, and assigns.

"Claim" means any claim, controversy, or dispute of any kind or nature between you and us.

A. This definition includes, without limitation, any Claim that in any way arises from or relates to:

- this Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account)
- this Arbitration Provision (including whether any Claim is subject to arbitration)
- the establishment, operation, or termination of your account
- any disclosures, advertisements, promotions, or other communications relating to your account, whether they occurred before or after your account was opened
- any transactions or attempted transactions involving your account
- any billing or collections matters relating to your account
- any posting of transactions (including payments or credits) to your account
- any goods or services charged to your account
- any fees, interest, or other charges assessed to your account, or their calculation
- any products, services, or benefits programs related to or offered in connection with your account (including any insurance, debt cancellation, or extended service contracts and any programs, rebates, rewards, sweepstakes, memberships, discounts, or coupons) whether or not we offered, introduced, sold, or provided them
- our receipt, use, or disclosure of any information about you or your account
- any other matters relating to your account or your relationship with us.

B. This definition also includes, without limitation, any Claim:

- regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading, or third-party claim)
- based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory, or other equitable relief)
- based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance, or wrongful acts or omissions of any type, whether negligent, reckless, or intentional)
- made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs, or a trustee in bankruptcy)
- for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made)
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued
- made as part of a class action, private attorney general action, or other representative or collective action, which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

**Arbitration Administrators.** One of the following arbitration administrators ("Administrator" or, collectively, "Administrators") will administer the arbitration:

| JAMS | American Arbitration Ass'n | National Arbitration Forum |
|---|---|---|
| 1920 Main St., Ste. 300 | 335 Madison Ave., Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may contact any of the Administrators to obtain information about arbitration, arbitration rules and procedures, fee schedules, and claim forms.

**Election and Initiation of Arbitration.** You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court. You or we may make a motion or request in court to compel arbitration of any Claim brought as part of any lawsuit. We will not elect or initiate arbitration of any Claim brought in a small claims court (or the equivalent), so long as the Claim remains in that court and is made solely on behalf of an individual or joint account holder, and is not made as part of a class action, private attorney general action, or other representative or collective action.

You and we must follow the rules of the Administrators to initiate arbitration. If you initiate arbitration, you may choose one of the Administrators, and you must mail us any notice

by the Administrator to your last-known billing address. If we have initiated arbitration, we will change the Administrator at your request if you notify us in writing at the above address within fifteen days of the date of any notice we send you of our initiation of arbitration.

**Procedures and Law Applicable in Arbitration.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA"). Questions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced, consistent with the FAA and the terms of this Arbitration Provision. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award any damages or other relief permitted by applicable substantive law, but the award shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration. The rules and procedures of the Administrator, which you may obtain from the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply. The arbitrator will not be bound by, and this Arbitration Provision shall not be subject to, the federal, state, or local rules of procedure and evidence that would apply in any court or to state or local laws that relate to arbitration proceedings. You or we may have a hearing in arbitration. Any arbitration hearing that you attend in person will take place at a location in the federal judicial district that includes your last-known billing address or at some other place upon which you and we agree. You or we may be represented by counsel. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through the use of protective orders). The arbitrator will make any award in writing and, at the timely request of either party, will provide a written statement of reasons for the award.

**Costs.** The party initiating arbitration will pay the initial filing fee. You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, "Administrator's Fees") under any applicable rules of the Administrator. If you seek, but do not qualify for, a waiver, we will consider any written request by you for us to pay or reimburse you for all or part of the Administrator's Fees. We also will pay or reimburse you for all or part of the Administrator's Fees if the arbitrator determines there is good reason for us to do so. We will pay any fees and costs we are required to pay by law. Otherwise, and except as provided in this Agreement, you and we will bear all of our respective fees and costs (including the Administrator's fees and the fees and costs relating to attorneys, experts, and witnesses), regardless of who prevails. Allocation of fees and costs relating to appeals in arbitration will be handled in the same manner.

**No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action, or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate, or otherwise bring Claims related to two or more accounts, individuals, or account holders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action, or other representative or collective action in arbitration, nor may you or we pursue such actions in court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected.

**Judgment, Enforcement, Finality, and Appeal.** The arbitrator's decision will be final and binding after fifteen days unless you or we seek an appeal of the award by making a written request to the Administrator. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as set forth under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

**Miscellaneous, Waiver, Severability, Survival.** If you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim. This Arbitration Provision shall survive: (i) suspension, termination, revocation, closure, or changes of this Agreement, your account, and your relationship with us; (ii) the bankruptcy or insolvency of any party; and (iii) any transfer of your account, or any amounts owed on your account, to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern.

© 2002 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.